**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM PLUMMER, | : | Civil No. 1:23-CV-00892 |
| Plaintiff, | : | |
| v. | : | |
| DR. ANDREW DANCHA, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is Defendants' motion for summary judgment, Plaintiff's motion in response to Defendants' motion for summary judgment, and Defendants' motion to vacate the order scheduling the jury trial pending the outcome of Defendants' motion for summary judgment. (Docs. 139, 154, 158.) For the reasons discussed below, the court will grant Defendants' motion for summary judgment, deny Plaintiff's motion in response, and grant Defendants' motion to vacate. The court will enter judgment in favor of Defendants and close the case.

**HISTORY AND PROCEDURAL BACKGROUND**

William Plummer ("Plaintiff"), a self-represented individual who is presently housed at the State Correctional Institute in Albion, Pennsylvania ("SCI-Albion"), filed this action pursuant to 42 U.S.C. § 1983 in May of 2023. (Doc. 1.) The operative complaint in this matter is the third amended complaint. (Doc. 80.) The remaining claims include Eighth Amendment deliberate indifference claims

stemming from the treatment of his back impairment against five defendants: (1) Dr. Andrew Dancha ("Dancha"); (2) Dr. Jay Cowan ("Cowan"); (3) Dr. Hockenburg ("Hochberg")[1]; (4) Jamie Larkin, a/k/a Bennett[2] ("Larkin"); and (5) Cheryl Hoffman ("Hoffman"). (Docs. 79, 80.)

A jury trial is currently scheduled for January of 2027. (Doc. 132.) On April 6, 2026, Defendants filed a motion for summary judgment, a brief in support, and a statement of material facts. (Docs. 139, 140, 143.) After multiple extensions by the court, Plaintiff filed a motion in response to Defendants' motion for summary judgment and a brief in opposition. (Docs. 154, 155.) Defendants did not file a reply. On October 23, 2026, Defendants filed a motion to vacate the scheduling order pending the outcome of their motion for summary judgment. (Doc. 158.)

The court will now address the three pending motions.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil

---

[1] Defendant Hockenburg is identified as John Hochberg, M.D. in the answer to the amended complaint. (Doc. 40.)

[2] In the answer to the second amended complaint, Defendant Larkin includes "(Bennett)" behind her name. (Doc. 69, p. 3.) Plaintiff identifies her as "Jamie Larkin (Bennett)" in the operative complaint. (Doc. 80.) The court assumes there has been a name change during litigation. For the sake of clarity, the court will refer to this defendant as Defendant Larkin.

cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at the State Correctional Institution Smithfield ("SCI-Smithfield") in Huntingdon County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## Motion for Summary Judgment Standard

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020), (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher*

*Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of his pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Defendants' Motion for Summary Judgment Will Be Granted.

#### 1. Summary of Third Amended Complaint

Plaintiff claims that he "has to now use a walker/wheelchair for mobility aids due to defendant's denying and ignoring recommendation, which may be a life-long handicap." (Doc. 80, p. 4.)[3] Plaintiff's complaint focuses on the events of February 24, 2022, August 11, 2022, and December 9, 2022. (*Id.*)

First, Plaintiff alleges that on February 24, 2022, he was seen by an off-site Physical Therapist at SCI-Coal Township who "recommended in his findings and recommendation report, in the section titled 'PLAN', Suggest that Mr. Plummer be housed in a level/in-door facility (SCI Chester) due to Mr. Plummer's limitation's." (*Id.*) Plaintiff attached a single page treatment note that contained this quote. (Doc. 72-2, p. 2.)[4] He alleges that this report was turned over to

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

[4] When the third amended complaint was filed as a separate document, the proposed exhibits were not associated with the complaint. The Clerk of Court will be directed to file Doc. 72-2 as an attachment to Doc. 80.

Defendant Larkin. (Doc. 80, p. 4.) He further alleges that on May 24, 2024, Dr. Robinson recommended that he be housed in a more compatible facility based on his restrictions and Defendant Larkin also ignored this recommendation. (*Id.*)

Plaintiff alleges that on July 26, 2022, he was seen by Dr. Robinson, who reviewed his medical records and saw that off-site doctors Williamson and Wecht's finding of no compression was contradicted by the actual MRI report stating that there was nerve root compression at L3 and L4. (Doc. 80, at 5.) He alleges that Dr. Robinson stated that he needed surgery and submitted a request/recommendation to be seen by an orthopedic surgeon. (*Id.*) Plaintiff states that on August 11, 2022, he saw Defendants Dancha and Cowan who denied Dr. Robinson's request that Plaintiff see an orthopedic surgeon. (*Id.*) He states that when he saw Dr. Robinson on September 11, 2022, Dr. Robinson indicated that he was in trouble for the orthopedic surgeon recommendation and he was being transferred to another facility. (*Id.*) Plaintiff reports that Dr. Robinson had managed to get him seen by a Rheumatologist. (*Id.*)

Plaintiff alleges that he was seen by the Rheumatologist, Dr. Denio, and on December 9, 2022, Dr. Denio stated that Plaintiff suffered from Trandelenberg gait caused by compression of the lumbar nerves and recommended another nerve conduction test, MRI, and neurological exam. (*Id.*, p. 5.) Plaintiff alleges that on February 24, 2023, a nurse told Defendant Hochberg that Plaintiff was to receive a

nerve conduction test, an MRI, and neurological exam. (*Id.*, p. 6.) Plaintiff states that he filed request slips on March 24, 2023, April 28, 2023, and May 24, 2023 to Defendants Larkin and Hochberg asking about the additional tests, all of which were ignored. (*Id.*)

Based on these alleged facts, Plaintiff raises Eighth Amendment deliberate indifference claims against all Defendants. (Doc. 80, p. 8.)

**2. Defendants' Statement of Material Facts**

Plaintiff was transferred from SCI-Forest to SCI-Coal Township on January 13, 2022. (Doc. 139-2, p. 110.) Plaintiff was issued a wheelchair the next day, on January 14, 2022. (*Id.*, p. 108.)

On January 28, 2022, Plaintiff attended physical therapy, and the Plan section of the treatment notes states "Suggest Consider of level Facility." (*Id.*, p. 147.)

Plaintiff was seen by PA Brian Davis on February 12, 2022, requesting a knee brace based on lower extremity weakness when walking with a walker. (Doc. 139-2, pp. 106–07.) He presented in a wheelchair and his medical records were reviewed showing no lumbar nerve root compression or spinal cord compromise. (*Id.*, p. 106.) No neurosurgery intervention was needed, he was to continue with physical therapy, and consideration would be given to a knee brace once he was out of a wheelchair. (*Id.*, pp. 106–07.)

On February 24, 2022, Plaintiff was seen again by a physical therapist who suggested a transfer to a level facility such as SCI-Chester due to limitations at the present facility. (*Id.*, p. 145.)

Plaintiff was next seen on March 18, 2022 by PA Stewart Ackerman, and during the exam he was able to stand and walk without difficulty, his range of motion was preserved, and the straight leg raise test was negative. (*Id.*, pp. 103–05.) Plaintiff was prescribed Mobic and instructed to notify medical if he did not experience resolution of his symptoms. (*Id.*) Plaintiff's medications were renewed when he requested them. (*Id.*, p. 102.)

On May 17, 2022, Plaintiff was seen by PA Brian Davis again complaining of low back pain. (*Id.*, p. 99–101.) He reported using the wheelchair for two years, but stated that he did try to walk around the block. (*Id.*) The plan was to place him in the MD line to discuss his back and radicular symptoms.

On May 24, 2022, Plaintiff was seen by Dr. Robinson and requested a transfer to SCI-Chester due to revised restrictions to use a walker and avoid certain surfaces. (*Id.*, pp. 96–98.) Under Plan, Dr. Robinson wrote "Pursue relocation to more compatible." (*Id.*, p. 97.) On June 27, 2022, Plaintiff's medications were renewed when requested. (*Id.*, p. 95.)

On July 22, 2022, Plaintiff was seen by PA Brian Davis who stated that Plaintiff stated he needed surgery and demanded to see a physician. (*Id.*, pp. 91–

93.) PA Davis noted that recent MRI and neurosurgeon report stated that no neurosurgical intervention was needed. (*Id.*) He was put on the MD line. (*Id.*)

On July 26, 2022, Dr. Robinson reviewed Plaintiff's chart and discussed his case with him. (*Id.*, pp. 88–90.) Dr. Robinson noted that his MRI was abnormal resulting in numbness and muscle weakness in the right leg and spine, that he was wheelchair bound due to abnormal gait, and the plan was to seek a second opinion from an orthopedic surgeon and follow upon August 2, 2022. (*Id.*)

On October 21, 2022, Defendant Larkin met with Plaintiff. (*Id.*, p. 82.) She showed him the consultation that had been placed for a Rheumatology evaluation for review of his abnormal MRI, numbness, and tingling. (*Id.*, p. 82.)

On October 25, 2022, Plaintiff saw Dr. Hochberg at sick call, who reviewed Plaintiff's imagining and EMG study and questioned his use of the wheelchair. (*Id.*, p. 79–81.)

On December 8, 2022, Plaintiff saw Rheumatologist Dr. Denio, who recommended Plaintiff complete another nerve conduction test, repeat an MRI, and see a neurologist. (*Id.*, pp. 139–143.)

Plaintiff initiated this lawsuit on May 31, 2023. (Doc. 1.)

On June 20, 2023, Plaintiff saw PA Brian Davis complaining of low back pain and ineffective medications. (Doc. 193-2, pp. 72–73.) The plan was to refer him to neurology and increase the dosage of his medication. (*Id.*)

On July 11, 2023, PA Stewart Ackerman saw Plaintiff who requested to speak with the medical director about increasing his medications. (*Id.*, p. 68.) He was to be placed on the MD line to discuss the need to increase his medications. (*Id.*)

Plaintiff was transferred to SCI-Albion on July 13, 2023. (Doc. 139-2, pp. 56–60.)

On August 29, 2023, Plaintiff's disability request for a transfer to SCI-Chester was denied by way of a letter signed by Robert Gimble, Deputy Secretary, and Christopher Oppman, Deputy Secretary. (*Id.*, pp. 124–25). In denying the request, it was noted that although Mr. Plummer has a disability, the disability was already being reasonably accommodated by the institution. *Id.* It further states that "[i]t is not the role of the Inmate Disability Accommodations Committee to approve specific housing requests. These requests must go through the Program Review Team (PRT) and/or Psychiatric Review Tem (PRT)." (*Id.*)

On September 14, 2023, Plaintiff received an MRI of his lumbar spine showing mild degenerative disc disease at L3-L4, L4-L5, and L5-S1. (*Id.*, pp. 20, 122.) There was no evidence of canal or foraminal stenosis. (*Id.*, p. 122.)

On December 1, 2023, Plaintiff completed an EMG study showing normal results. (*Id.*, p. 201–02.)

On March 12, 2024, Plaintiff was seen by Dr. Michael Leone of AHN Neurology, who stated the results of the recent MRI were unrevealing, and the plan was to consider doing genetic testing to check for hereditary spastic paraplegia ("HSP"). (*Id.*, pp. 232–35.)

### 3. Plaintiff's Statement of Disputed Facts

Plaintiff attached a statement of disputed facts to his brief in opposition to Defendants' motion for summary judgment. (Doc. 155, p. 8.) In it, he disputes the alleged fact that he received a wheelchair at SCI-Coal Township on January 14, 2022. (*Id.*) Instead, he states that he has had a wheelchair since 2019 while housed at SCI-Forest. (*Id.*)

Plaintiff also challenges the statements made in PA Auckerman's treatment notes that he could stand and walk without difficulty and provided the grievance he filed to challenge these alleged inaccurate statements in his medical records. (*Id.*)

Next, Plaintiff challenges the Defendants' statement that the MRI reviewed by Dr. Robinson was abnormal and attached his affidavit in support of Dr. Robinson's statement that the conclusion that his MRI was normal was in contradiction to the MRI reports. (Doc. 155, p. 8; Doc. 155-2.)

Plaintiff conceded the remaining facts. (Doc. 155, p. 8.)

### 4. Deliberate Indifference

Plaintiff raises claims of Deliberate Indifference under the Eighth Amendment against Defendants. (Doc. 80.) Specifically, he alleges that Defendants Larkin and Hoffman ignored the February 24, 2022 and May 24, 2022 recommendations of the physical therapist and Dr. Robinson that he be transferred to SCI-Chester, that Defendants Dancha and Cowan denied Dr. Robinson's request to send Plaintiff for a surgical consultation due to cost-saving reasons, and that Defendants Larkin, Hochberg, and Hoffman ignored the December 9, 2022 recommendation by Dr. Denio that he be sent out for an MRI and nerve conduction test. (Doc. 80, p. 8.)

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326,

346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard is met when a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026) ("So far from banning all non-medical considerations, courts forbid only retaliation, deliberately inflicting pain or harm, and refusing to treat at all based solely on cost."). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)).

In contrast, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010), *report and recommendation adopted,* No. 1:09-CV-1551, 2011 WL 780340 (M.D. Pa. Feb. 28, 2011), *aff'd,* 715 F.3d 117 (3d Cir. 2013) (quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d

Cir. 1979)). A "mere disagreement as to the proper medical treatment . . . does not support a claim of an [E]ighth [A]mendment violation." *Pearson*, 850 F.3d at 543 (citation omitted).

The evidence presented by Defendants demonstrates that Plaintiff received treatment in response to each of his complaints. While Plaintiff may not have agreed with the treatment he received or the timing of that treatment, his disagreement alone is not sufficient to constitute an Eighth Amendment violation.

**i. Wheelchair Usage**

First, the court turns to Plaintiff's allegations in the complaint that he now requires a wheelchair because of Defendants' alleged deliberate indifference. Evidence submitted by Defendants shows that Plaintiff stated he had used a wheelchair two years prior to his arrival at SCI-Coal Township. (Doc. 193-2, p. 99.) Plaintiff agreed that he used a wheelchair since 2019 in his statement of disputed facts and he provided a Patient Activity Restrictions Report showing that he was given a wheelchair on December 27, 2019. (Doc. 155, p. 8; Doc. 155-9.) Therefore, there is no dispute that Plaintiff used a wheelchair prior to the involvement of Defendants in his treatment. Therefore, the alleged inaction of Defendants did not result in his use of the wheelchair.

**ii. Transfer to SCI-Chester**

Plaintiff alleges that Defendants Larkin and Hoffman's denial of the recommendation that he be transferred to SCI-Chester constituted deliberate indifference. (Doc. 80, p. 8.) Defendants presented evidence that Plaintiff's transfer to SCI-Chester was denied by non-parties and the decision to transfer an inmate was made the PRT team. (Doc. 139-2, pp. 124–25.) Plaintiff conceded to the statement of material facts submitted by Defendants concerning the decision-maker for the denial. (Doc. 155, p. 8.) Plaintiff presented no evidence to demonstrate that Defendants Larkin and Hoffman had personal involvement in the denial of the transfer. Without evidence of personal involvement of Defendants Larkin and Hoffman in the denial of his transfer to SCI-Chester, the deliberate indifference claim cannot succeed. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.") (internal citations omitted). Therefore, the court will grant summary judgment in favor of Defendants Larkin and Hoffman in regard to the denial of the transfer to SCI-Chester.

### iii. Surgical Consultation

Next, Plaintiff alleges that Defendants Dancha and Cowan denied Dr. Robinson's request to send Plaintiff for a surgical consultation due to cost-saving reasons. (Doc. 80, p. 8.) Defendants attached evidence in the form of Defendant Dancha's responses to Plaintiff's interrogatories that Plaintiff was not sent to an orthopedic surgeon as Dr. Robinson recommended because medical opted to first send him to a rheumatologist as first recommended by a neurosurgeon in 2020. (Doc. 139-6, p. 3.)

Plaintiff argues that the referral to the neurosurgeon was denied based on cost and the belief that Plaintiff was malingering. (Doc. 155, p. 7.) As support, he cites Dr. Denio's clinical notes following the December 8, 2022 appointment. (Doc. 155, p. 7; Doc. 155-11.) However, Dr. Denio did not speak to Dr. Dancha's alleged concern with cost. Instead, he stated that "I think he needs further evaluation of his neurologic system as my sense is this is not a malingering person." (Doc. 155-11, p. 1.) A statement by a provider that a patient complaining of chronic pain is not malingering is not evidence that the referring provider assumed said patient was malingering. Therefore, Plaintiff's evidence does not support his conclusion that Defendants Dancha and Cowan denied treatment based on cost and suspected malingering.

Instead, Defendants have presented evidence that the decision to send Plaintiff to a rheumatologist was based on a medical opinion from 2020 and not on cost as alleged in the complaint. *See* Fed. R. Civ. P. 56(c)(1)(A) (allowing responses to written interrogatories to be considered during a Rule 56 motion). Plaintiff has not presented any evidence that contradicts Dr. Dancha's response to his interrogatories. Therefore, there is no dispute of material fact, and the court will grant summary judgment on this claim.

**iv. MRI and EMG**

Plaintiff alleges that Defendants Hochberg, Larkin, and Hoffman ignored the December 9, 2022 recommendation by Dr. Denio that he be sent out for an MRI and EMG test. (Doc. 80, p. 8.) Defendants submitted evidence that these additional testing and referrals occurred in 2023. (Doc, 139-2, pp 122, 232–35.) In response, Plaintiff argues that denying access to a specialized provider and a delay in treatment constitutes deliberate indifference. (Doc. 155, pp. 4–5.) However, Plaintiff presented no evidence that Defendants Larkin, Hochberg, and Hoffman denied or delayed access to specialists and testing.

**a. Hochberg**

As part of the third amended complaint, Plaintiff submitted copies of his requests to staff on March 24, 2023, April 28, 2023, and May 24, 2023 addressed to Defendant Hochberg asking for the additional testing recommended by Dr.

Denio. (Doc. 72-2, pp. 18–23.) Plaintiff alleges that Defendant Hochberg ignored these requests. (Doc. 80, p. 8.) In their motion for summary judgment, Defendants submitted a grievance completed by Plaintiff on July 1, 2023 stating that Defendant Hochberg spoke with Plaintiff about the referrals on June 29, 2023. (Doc. 139-3, pp. 144 146, 148.) Consistently in the grievance process, Plaintiff states that Defendant Hochberg stated that Plaintiff should have received the MRI and EMG. (*Id.*) Therefore, Defendants have submitted evidence that Plaintiff's requests were not ignored by Defendant Hochberg. Defendant Hochberg spoke with him about the referrals in June of 2023, stating that they should have occurred. Defendants further submitted evidence that Plaintiff received both the MRI and the EMG in September and December of 2023, respectively.

In response, Plaintiff submitted responses to written interrogatories by Defendant Hochberg identifying Defendant Hochberg's title as State Medical Director at SCI-Coal Township starting on September 13, 2022 after he took over for Dr. Robinson. (Doc. 155-8.) Defendant Hochberg stated that his duties "were to provide medical services to inmates and assist with other medical provider as needed to facilitate patient care." (*Id.*) Plaintiff has not submitted evidence that Defendant Hochberg was responsible for scheduling the off-site tests.

The court acknowledges that was a delay between Dr. Denio's December 2022 opinion that additional MRI and EMG testing was recommended and the

September of 2023 MRI and December of 2023 EMG. However, Plaintiff did not submit evidence that any action or inaction by Defendant Hochberg delayed these tests. Neither did Plaintiff submit any evidence that the delay was intended to cause Plaintiff additional pain or for reasons associated with cost.

Here, Defendants have submitted evidence that Defendant Hochberg responded to Plaintiff's three requests for testing following Dr. Denio's opinion and that the testing was ultimately received. Plaintiff has failed to counter Defendants' submission with evidence that Defendant Hochberg's action or inactions caused the delay with the intent to cause pain or for any non-medical reasons such as cost. *See DiFraia*, 171 F.4th at 629 ("For better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, or even very good."). Therefore, the court will grant summary judgment in favor of Defendant Hochberg.

**b. Larkin**

Plaintiff submitted requests to staff on March 24, 2023, April 28, 2023, and May 24, 2023 addressed to Defendant Larkin asking for the additional testing recommended by Dr. Denio. (Doc. 72-2, pp. 18–23.) Turning to the requests sent to Defendant Larkin, the court looks to the documents Plaintiff submitted with his third amended complaint. This included responses to written interrogatories directed to Defendant Larkin in which she identifies her duties as follows:

> Ms. [Larkin] was the Health Services Administrator ("HSA") at SCI-Coal Township. Her relevant duties included oversight of Wellpath administrative operations, ordering of medical and administrative supplies, carrying out disciplinary action if needed, entering ER, inpatient, and transportation events in ERMA, clinical and staff schedules, and obtaining records from off-site medical visits. Her job duties did not include rendering any treatment or making any treatment decisions.
>
> Additionally, Ms. [Larkin] also temporarily covered the clinical coordinator position at SCI-Coal Township from 05/16/2022-09/25/2022 during a brief vacancy of the position. The clinical coordinator schedules both on-site and off-site appointments.

(Doc. 72-2, p. 3.) Plaintiff also submitted the October 21, 2022 log of his meeting with Defendant Larkin in which he showed her his previous MRIs and they discussed the referral to Rheumatology. (Doc. 80, p. 8; Doc. 72-2, p. 25.) Plaintiff relies on this as evidence that Defendant Larkin had actual knowledge of his nerve root compression. (*Id.*)

First, the court notes that the evidence submitted with the third amended complaint, specifically the requests to staff and the responses to written interrogatories, demonstrates that at the time he submitted his written requests to Defendant Larkin following up on the recommended MRI and EMG, dated March 24, 2023, April 28, 2023, and May 24, 2023 it was not Defendant Larkin's role to schedule off-site appointments.

Second, with their motion for summary judgment Defendants submitted evidence that the MRI and EMG were ultimately completed in September of 2023

and December of 2023, respectively. While it took several months to complete the testing, Plaintiff did not respond with evidence that Defendant Larkin was the source of that delay or that such delay was done intentionally to cause harm. "[T]he Eighth Amendment does not create a general constitutional tort of prison negligence. It requires subjective blameworthiness as well as serious mistreatment or neglect." *DiFraia*, 171 F.4th at 629. Therefore, the court will grant summary judgment in Defendant Larkin's favor.

**c. Hoffman**

In his third amended complaint, Plaintiff includes Defendant Hoffman in her role as Clinical Coordinator, and alleges that her failure to schedule the MRI and EMG constitutes deliberate indifference. (Doc. 80, p. 8.) Plaintiff likewise relies on Defendant Larkins' statement that "[t]he clinical coordinator schedules both on-site and off-site appointments," in support of Defendant Hoffman's liability. (Doc. 80, p. 8; Doc. 72-2, p. 3.)

With their motion for summary judgment, Defendants submitted evidence that the MRI and EMG were ultimately completed in September of 2023 and December of 2023, respectively. Again, while it took several months to complete the recommended testing, Plaintiff did not respond with evidence that Defendant Hoffman was the source of that delay or that such delay was done intentionally to

cause harm. *See DiFraia*, 171 F.4th at 629–30. Therefore, the court will grant summary judgment in Defendant Hoffman's favor.

In conclusion, the court will grant Defendants' motion and enter judgment in favor of Defendants.

**B. Defendants' Motion to Vacate Will Be Granted.**

On October 23, 2026, Defendants filed a motion to vacate the order scheduling the January 11, 2026 jury trial pending resolution of the motion for summary judgment. (Doc. 158.) Because the court will grant the motion for summary judgment, there is no longer a need for a jury trial. Therefore, the court will grant Defendants' motion and vacate the scheduling order.

## CONCLUSION

For the reasons set forth above, the court will grant Defendants' motion for summary judgment and direct the Clerk of Court to enter judgment in favor of Defendants. The court will deny Plaintiff's motion in response to Defendants' motion for summary judgment because it asks the court to deny Defendants' motion for summary judgment. The court will grant Defendants' motion to vacate and will vacate the court's February 9, 2026 order scheduling the jury trial. The court will also close the case.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 27, 2026